[No. 2086.]

JOSEPH McGREW v. THE STATE.

1. AGGRAVATED ASSAULT — INFORMATION — EVIDENCE.— In order to sustain a conviction for aggravated assault, it devolves upon the State to prove the circumstances of aggravation as alleged in the information. Proof of other circumstances of aggravation, however sufficient, if alleged, will not suffice. See the opinion in illustration.

2. SAME — EVIDENCE.— If the circumstance of aggravation alleged is that the assault was committed with a particular kind of instrument, the same being a deadly weapon, the proof must not only show that the instrument was such as alleged, but that it was, in fact, a deadly weapon.

3. SAME — VARIANCE — FACT CASE.— See the statement of the case for evidence *held* insufficient to sustain a conviction for aggravated assault, because of variance in the *allegata* and the *probata,* and because it fails to show the deadly character of the weapon.

APPEAL from the County Court of Hunt. Tried below before the Hon. J. S. Sherrill, County Judge.

The conviction was for an aggravated assault upon one Alex. Ablowich, the information alleging that the said aggravated assault was committed by the appellant, with a certain "*bois d'arc* stick, the same being a deadly weapon," in Hunt county, Texas, on the 18th day of August, 1884. A fine of $25 was the penalty imposed.

Alex. Ablowich was the first witness for the State. He testified that on the 18th day of August, 1884, the defendant came to witness's pasture, which is situated a few miles from Commerce, in Hunt county, Texas. The witness and several other parties were in that pasture, preparing to start to Denton county with about one hundred head of cattle. Defendant approached witness, cursed him, and, with an oath, said that witness should not remove those cattle until witness had settled with him. He first drew a pistol about half way out of his scabbard. He then appeared to reflect a little, replaced his pistol, and rode to a pile of pickets near by, procured one, and returned with the picket raised in his hand and told witness to get out of the gate, or he would maul h—ll out of witness. Witness shoved the defendant's horse back, and thus prevented him from striking. Witness thought that, if not thus prevented, the defendant would have struck him with the picket. Defendant did not strike, or strike at, the witness with the picket. Defendant said nothing more than the words repeated by witness. Witness, immediately after this occurrence, sent his little son to Commerce after the constable. Prior to June, 1884, for a period covering more than a year, the defendant had been in the employ of

the witness. He claimed that witness was still in his debt for wages, and insisted that witness should not remove his cattle until he made payment. Witness denied that he owed the defendant any sum of money. Witness's feeling toward defendant was not friendly. He did not like the defendant. The State rested.

Bud Jernigan was the defendant's first witness. He testified that he was present in Ablowich's pasture on or about August 18, 1884, when the altercation between defendant and Ablowich, which gave rise to this prosecution, occurred. Witness heard the parties quarreling, heard defendant curse Ablowich and tell him that he should not remove the cattle to Denton county until he had settled with him. He did not see the defendant draw, or attempt to draw, a pistol, nor did he see a pistol during the controversy. Defendant rode to a pile of pickets, procured one, rode back to where Ablowich was standing near a gate, and told him to get out of the gate, for he, defendant, would be d—d if it was not his intention to pass through that gate. He seized the gate with his left hand and attempted to push it open. He had the picket lying across his lap. Witness did not see all that occurred immediately at the gate, but he did not think that the defendant at any time held the picket in a striking attitude. Witness did not want to see the difficulty, and therefore took no more notice of what occurred than he could help. Defendant did not strike Ablowich, nor did witness see him attempt to do so. Defendant, very soon after the incidents described, got to laughing, and appeared to be in a good humor. Lige Wilkins testified to the same facts, in substantially the same language, and the defense closed.

Abe Ablowich, the brother of the alleged injured party, was the first witness offered by the State in rebuttal. He testified that he was present when the difficulty between his brother and the defendant occurred. The defendant came to the pasture and said that the cattle should not be taken to Denton county until he was paid. He claimed that Alex. Ablowich still owed him for service. Defendant cursed Alex., and said that he would be d—d if he didn't go into the pasture through the gate. I saw no pistol, but saw the defendant put his hand behind him. Defendant rode to a pile of pickets near by, procured one, and with it in his hand, held sidewise from his horse, rode back towards Alex. and ordered him to get out of the gate, as he was going into the pasture. Witness caught the reins of the bridle on the horse and pushed him back, and thus prevented him from striking Alex. He did not strike or strike at Alex.

Constable W. H. Harris testified, for the State, that he knew of

the difficulty out of which this prosecution grew. Alex. Ablowich sent for witness to go to his pasture and prevent any collision. Witness went and saw the defendant there on that day. On the way back to Commerce, defendant told witness that he got the stick, and got it to strike Alex. Ablowich with, and that he fully intended, if he did not open the gate, to beat h——ll out of him with it.

*B. F. Looney*, for the appellant.

*J. H. Burts*, Assistant Attorney-General, for the State.

HURT, JUDGE. This is a conviction for aggravated assault. It is alleged by the information that appellant assaulted Alex. Ablowich with a *bois d'arc* stick, the same being a deadly weapon. Upon the trial the *bois d'arc* stick was, we suppose, abandoned, for it is not mentioned by any of the witnesses either for the State or defendant.

That which makes this assault aggravated is the fact that it was committed with a certain *bois d'arc* stick, the same being a deadly weapon; and this information charges an aggravated assault because it alleges that it was made with a *bois d'arc* stick, and that said stick was a deadly weapon. By reason of this allegation, there being no other circumstance of aggravation alleged, this information is held sufficient for an aggravated assault. This being the case, the rule requires that the circumstance of aggravation as laid in the indictment or information must be proved; and that proof of other circumstances of aggravation will not suffice. (*Pinson* v. *The State*, 23 Texas, 579; *Williams* v. *The State*, 8 Texas Ct. App., 367; *McGee* v. *The State*, 5 Texas Ct. App., 492; *Briggs* v. *The State*, 6 Texas Ct. App., 144.)

As above remarked, the prosecution abandoned the *bois d'arc* stick, and relied upon proof of an aggravated assault with a picket. Now, whilst evidence showing an assault with a picket was admissible, being part of the *res gestæ*, yet to convict of an aggravated assault the State was confined, by the information, to proof that the assault was made with the *bois d'arc* stick, and that the same was a deadly weapon.

Again, if the State should be permitted to abandon the stick and rely upon the picket as the deadly weapon,— which is not permissible,— certainly proof that it was a deadly weapon must be made. In the case in hand there is no attempt to prove that the picket was

a deadly weapon. The *bois d'arc* stick figures only in the informa-tion, not being alluded to on the trial by witnesses for either party.

The judgment is reversed and the cause remanded.

*Reversed and remanded.*

[Opinion delivered November 11, 1885.]